

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2003

# Ahmed v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4302

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ahmed v. Atty Gen USA" (2003). *2003 Decisions*. Paper 331.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/331

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  02-4302
_____

SYED AHMED,

*Petitioner*

v.

JOHN ASHCROFT,
Attorney General of the United States,

*Respondent*

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
(INS No. A93 256 562)

_____

Submitted Under Third Circuit LAR 34.1(a)
July 24, 2003

Before: ALITO, FUENTES and BECKER,  *Circuit Judges.*

(Filed July 30, 2003 )

_____

OPINION
_____

BECKER, *Circuit Judge*.

This is a petition for review of a final order of removal issued by the Board of

Immigration Appeals ("BIA") dismissing the petitioner Syed Ahmed's appeal from the Immigration Judge's ("IJ") order denying his application for relief and ordering him removed to Pakistan. Ahmed had argued that he qualified for asylum based on a well-founded fear of persecution on account of his political opinion. *See* 8 U.S.C. § 1101(a)(42)(A) (defining a "refugee" as a person unable to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . ."). [1]

Ahmed maintains that because of his membership in the Pakistan Student Federation ("PSF") and later the Pakistan People's Party ("PPP"), he was persecuted by opposition party members on numerous occasions between the years 1984 and 1989. He alleges that on one occasion in 1989 he was kidnapped and tortured, requiring hospitalization for a "couple of weeks." Ahmed claims that he reported the kidnapping to the police, who conducted an investigation but never arrested anyone. He also asserts that as a result of his political activities, he was beaten and shot at (but never wounded) during rallies. Ahmed contends that his driver was beaten by opposition party members; after this incident, Ahmed claims he was threatened by opposition party members and went into hiding. Ahmed testified that his father received anonymous threatening telephone calls in which the caller stated that Ahmed would be killed if he did not "stop." Ahmed

---

[1] On appeal, Ahmed does not challenge the IJ's conclusion that he is ineligible for protection under the Convention Against Torture.

2

recounted another incident in which he and his family were shot at by individuals on motorcycles, forcing Ahmed into a serious car accident. He also alleges that Pakistani government agents obtained a false report stating that Ahmed was involved in a hotel riot and that they went to his parents' house looking to arrest him; Ahmed was not home.

In 1990, Ahmed traveled to Mecca, Saudi Arabia for two months to participate in the Haj, an annual Muslim pilgrimage. He then returned to Pakistan, even though he claims that the government was looking for him as a result of the false arrest warrant. Later in the same year, Ahmed entered the United States as a non-immigrant visitor for pleasure. In 1997, Ahmed pled guilty in the United States District Court for the District of Maine to unlawfully attempting to obtain citizenship documents; he had gone to Maine to attempt to obtain a false birth certificate so that he could get a U.S. passport to visit his father in Pakistan and then return to the United States.

Ahmed submitted the following to support his testimony: (1) a letter from the president of the PPP, certifying his membership in the PPP and the PSF and stating that Ahmed "has suffered many hardships while working as a Divisional Secretary in [the PSF"; (2) a letter from a representative of the PPP's Member Executive Committee, confirming Ahmed's membership in the PPP and mentioning his 1989 kidnapping; (3) an affidavit from Ahmed's father stating that Ahmed "is not safe in Pakistan in the political circumstances as they exist today"; (4) a medical report issued in Saudi Arabia describing Ahmed's back injuries; and (5) a report by the Karachi police listing Ahmed as a

3

participant in a hotel riot.[2]

The IJ issued an oral decision in which he determined that Ahmed's testimony was not credible. The IJ found Ahmed's claim unbelievable for a number of reasons. First, Ahmed mentioned only the alleged kidnapping in his original written asylum application; he mentioned different instances of persecution (but not the kidnapping) when he appeared before an asylum officer, and then additional instances of persecution when he testified before the IJ. The IJ reasoned that if these incidents had really occurred, Ahmed would have mentioned them all at the outset; the IJ did not believe Ahmed's explanation that he did not understand that he was supposed to list all instances of persecution on the asylum application, noting that Ahmed was well-educated and spoke English well (he went to college in London for a year) and was thus sophisticated enough to figure out how to fill out the application for asylum properly.

Second, the IJ noted that the corroborating letters from the PPP leaders and Ahmed's father contained only vague statements and did not provide evidence of specific

---

[2]Ahmed also submitted other documentation in the form of news articles to demonstrate that PPP members are commonly persecuted in Pakistan. However, we note that the State Department's 1997 Profile of Asylum Claims and Country Condition Report stated that "[w]hile many human rights abuses are noted in the Country Reports, in general it can be said that the citizens of Pakistan have the right and ability to change their government peacefully. Dozens of political parties actively participate in local, provincial and national elections. Pakistanis are free to join the political party of their choice and participate in party activities openly." [A377] We also note that nearly 20 years have passed since many of the alleged incidents of persecution against Ahmed took place.

instances of persecution. Third, Ahmed had not provided affidavits from his sister, mother or driver corroborating specific instances of persecution (Ahmed stated that he was in touch with his family and could provide no reason why they did not submit affidavits). Fourth, Ahmed did not provide hospital records memorializing his treatment following the alleged kidnapping, yet he did provide hospital records from his trip to Saudi Arabia, suggesting that he had the ability to obtain hospital records. Fifth, at one point Ahmed stated that he went into hiding at his sister's residence, but at another point he stated that he went into hiding at the residence of a friend.

Sixth, Ahmed returned to Pakistan from Saudi Arabia after the alleged instances of persecution took place, although he had obtained a visa to go to the United Kingdom (the IJ did not find believable Ahmed's explanation that he did not have enough money to go to the UK). Seventh, Ahmed tried to obtain a false birth certificate to return to Pakistan. The IJ reasoned that Ahmed could not have really feared being persecuted or killed in Pakistan if he voluntarily returned (or tried to return) on two occasions after he had allegedly been threatened, beaten, tortured, and shot at. Finally, Ahmed's criminal behavior demonstrated that he was not credible. The IJ also noted that Ahmed could not identify the individuals who kidnapped him or the individuals who shot at and threatened him; he simply assumed they were members of the opposition party. The IJ stated that he could not even be sure that Ahmed was persecuted on account of his political opinion even if his allegations were true.

5

On appeal, the BIA filed a decision in which it agreed with the conclusions of the IJ, with two exceptions: (1) the BIA did not rely on Ahmed's asylum interview as a basis for the adverse credibility finding (the asylum officer concluded that Ahmed had failed to provide any details suggesting that the events he described had actually occurred, but Ahmed claimed that he was sick with a 103 degree fever during this interview and that the asylum officer did not give him a chance to fully answer the questions); and (2) the BIA noted that it did not believe that Ahmed had misrepresented his prior conviction record while under oath (besides pleading guilty to unlawfully attempting to obtain citizenship documents, Ahmed also pled guilty to using a motor vehicle without the owner's permission and was arrested for soliciting prostitution). The BIA explained the decision to affirm as follows: "We find that the [IJ's] . . . specific, cogent reasons are sufficient to find that the respondent was incredible. Specifically, the respondent failed to mention two alleged 'drive-by' shootings in his written application for asylum. Such discrepancies involve the heart of respondent's asylum claim."

We review the decision of the BIA using the highly deferential substantial evidence standard, under which we must "uphold the agency's findings of fact to the extent that they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001)). To disturb the decision of the BIA, we must conclude that "the evidence not only *supports* . . . but *compels*"

6

reversal. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis in original). "Likewise, adverse credibility determinations are reviewed for substantial evidence." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998).

We are satisfied that the BIA's decision was supported by the record and does not compel reversal. In particular, we agree that the fact that Ahmed returned to Pakistan after he claims he was kidnapped, tortured, threatened, and beaten and knowing that the government was looking for him based on a false arrest warrant suggests that he did not fear persecution. The IJ and the BIA surely did not err by finding unconvincing the explanation for his return to Pakistan despite having obtained a visa to go to the U.K. (that he did not have enough money). Moreover, Ahmed made another attempt to return to Pakistan by obtaining a false U.S. passport, despite his claim that he fears he will be killed if he is returned to Pakistan. Once again, although Ahmed claimed that he wanted to visit his sick father, it is reasonable to infer that Ahmed did not really fear that he would be killed if he made an attempt to return to Pakistan.

Moreover, we are not persuaded by Ahmed's claim that he could not obtain additional corroboration for his alleged persecution or by his citations to case law holding that corroborative evidence is not required to establish an applicant's credibility. Given the facts of this case, the BIA did not err by concluding that Ahmed should have been able to provide additional corroborative evidence – Ahmed provided some vaguely-worded corroboration, suggesting that he had access to documentary evidence. We also

7

note that although an applicant's testimony may be sufficient to sustain his burden of proof, that does not mean that the absence of corroborative evidence (where possible) cannot be taken into account by the IJ and the BIA. In short, Ahmed has not met the rigorous *Elias-Zacarias* standard. The petition for review will be denied.[3]

---

[3]Ahmed also claims that his due process rights were violated because the IJ deprived him of a "full, fair and impartial hearing" by "continuously prevent[ing]" him from providing "thorough" responses to the questions posed by counsel and the IJ. However, Ahmed did not raise this issue before the BIA and this failure to raise the issue will bar this Court from considering it. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right. . . . ").

TO THE CLERK

        Please file the foregoing opinion.


                    /s/ Edward R. Becker          
                    Circuit Judge